I'm here to ask this panel to basically exercise its discretion. This panel is sitting as a reviewing court and I'm going to ask that you exercise the discretion to correct a miscarriage of justice. Counsel, let's suppose that you're correct that it was prosecutorial misconduct to tell the jury that the presumption of innocence disappears once you get the case and it was prosecutorial misconduct to tell the jury that there was a lengthy report they would not be seeing that supported the prosecution's case. Let's suppose both are misconduct. The question is whether there was any prejudice or whether it was harmless. I would have thought the prosecution would have been in considerable trouble because its star witness did not show up, the illegal alien that was supposed to testify against the coyote. However, the jury took less than two hours to convict, so evidently they bought the government's case very easily even without the star witness. Why was there prejudice? The length of the deliberation, your – basically the trial itself was – the evidence portion was no more than a day if we were to add up and subtract all the delays in between the hearings or the motions hearings, sidebar and whatnot. So I don't think the – I beg to disagree that the length of the deliberation would be a relevant factor for this Court to consider whether or not there was evidence or overwhelming evidence notwithstanding the prosecutorial misconduct. I suppose you could also say that that just shows the prejudice because it carried a special weight. I'm not sure the two hours cuts one way or the other. That's – I tend to agree with your argument. It's really – doesn't really say this or that. I think the misconduct – and it doesn't have to rise to the level of intentional. I'm stuck by the plain error standard. I did not object. I missed it. I regret it, and I hope it never happens again in my career. Specify the prosecutorial misconduct that you're talking about. Basically, it is the cumulative effect. Yes. Well, I don't want a cumulative effect. Give me issue number one. Misconduct number one. Misconduct number one is the closing argument that the presumption disappears when the door – when they start deliberating, when they close the door. Clearly wrong. Wasn't that corrected right away by the Court? I don't believe it was, Your Honor, because I didn't judge it. I missed it. Did the judge instruct the jury before or after the closing arguments? I believe it was after. He instructed after the closing arguments? Yes. And the instructions were correct on the presumption? Yes. So it was corrected by the Court, and the Court tells the jury usually what the lawyers say doesn't make much difference. Well, but – Why didn't you object? I missed it, Your Honor. I have no excuse. It's embarrassing to stand here and admit it. I just missed it. All right. What about the other one? As I said, I've missed many issues. What about asking whether witnesses lied? That's your other misconduct, right? Yes. Didn't you do the same thing? I did not object. But you did the same thing. You asked witnesses whether somebody else was lying. If I did that, I may have done it maybe once or twice, not in the series. I mean, sitting there in the courtroom, getting the feel of the explosiveness of that portion, I haven't put that in the brief. However, if it were just that alone, maybe it would have been more of a misstep category. However, when you combine that with the other aspects of the misconduct, I believe then we're into the cumulative effect argument. But Your Honor just asked me not to consider the cumulative effect. There's the other two areas, if you'd like me to continue on that issue. The reference to the report or the inference that there was this lengthy report that would have corroborated the government witness's position. There's about 12 individual conducts or references. And then also the duty to convict, that the jury had the duty to convict. The whole trial gives the appearance of not having been done skillfully, I guess, on either side. I mean, the whole thing looks like some kind of a mess. Both prosecution and, with all respect, your errors in not catching things. I cannot disagree with the court, Your Honor. And that's why I'm here. You're telling us, look, this just wasn't a fair trial from any perspective. That's the bottom line. That's your bottom line. I mean, just my own inaction has caused us the plain error standard. I don't mean to get personal. Was this one of your first trials? My first trial is in the federal arena, yes. It's actually my second, 1324. Actually, my first transportation trial. Well, we'll ask the other side about the prosecutor. It's embarrassing for me to stand here and admit that error, but I'm stuck by it. And I could not frame the issue that it definitely raises in this hearing. So I'm bound by the rules of the appellate practice. If not, I would have done it. Anyway, to move on, if absent any other questions, I'll just move on. Basically, the misconduct, and I won't dwell too much on that anymore. However, in the Perlaza case, which had just come out about a year or so before that, the prosecutor made a similar comment. And the court found that even though there was strong evidence of guilt, the misconduct by itself required a reversal. So the court did not even get into the part of analysis of whether or not there was strong evidence or not. It just said just by itself requires reversal. And also, my inaction in no way invited the comments. We're not in a situation where I said something that would have opened the door. I said something in my closing argument that would have opened the door to the comments by the prosecutor. Basically, inaction does not excuse misconduct. So with those comments... What was the last thing that Jerry heard on the presumption? That was the, as I understand it, the instructions came after argument, is that it? Is that what you said? I believe so. Okay, so in Perlaza, one of the things we were concerned about was that the court essentially ratified the misstatement. Whereas in this case, it was just the contrary, wasn't it? The district court, in absence of any objection, didn't intercede. But when it came to instruct the jury, it instructed the jury pretty clearly that the prosecution has the burden of proof, presumption of innocence, so on and so forth. So didn't that effectively, as Judge Trotter earlier suggested, amount to a curative instruction? I want to make sure I understood your question. When you cited Perlaza, and one of the reasons Perlaza said what you said, because there was no curative instruction, it was just the opposite. Here there was not a requested curative instruction, but an instruction to the jury as to what their role was and what the presumption of innocence, how it played. Your Honor, but the instruction, the effect of the instruction coming from the court by itself versus the effect of the argument, the prosecutor standing there with the facts, I believe they have different effects on the jury. Well, that may be, but... I understand that on the record it was done, yes. All right. Okay, I think you may want to address other issues. Thank you. And basically, the sufficiency of the argument or lack thereof, this was a unique case pattern in our district. I've compared it to other cases. Let's say this is a foot guide case. We have cases where we're out in the desert and the guide is guiding four or five people through the bushes. This was not that case. We have it in a very populated area, and we have evidence of that in the record if Your Honor would like me to make reference. And what's the point you're driving at? Basically that this was not as overwhelming a case, I don't think. He's there, he's acting crazy, he's yelling. That's my client. He knows Border Patrol is all over the place. That's like the center for the Border Patrol. His conduct basically is just crazy. He's yelling. And that's what he is. Could I back up to something? Yes. It really mattered to me whether the jury instructions were before or after the prosecutor told the jury that there was evidence they haven't gotten to see and that the presumption of innocence was gone. And you said it was after, which of course is adverse to your case. So that's it for me on whether it was before or after. But I just happen to be thumbing through the excerpts here, the appellant's excerpts volume two. And it looks like the judge instructed the jury before and the last thing the jury heard was the prosecutor. Could you tell me what the story is here? I'm not trying to correct you because you tried the case, you know your record. I just got the little bit of time an appellate judge puts into it. So you educate me. If I may have a moment to just get my answer straight. I kind of thought it was after. I'll correct myself if I may have the time. Maybe I'll sit down. Maybe save some time for rebuttal. Yes. Thank you. Thank you, counsel. May I just address before I sit down the sensing issue. I think the sensing issue is a different category of analysis. And there was substantial prejudice. These guidelines were basically higher for failing to apply the three-point downward adjustment. And again, I missed it. No excuse for it or justification. And I believe the issue in the sensing is that the, whether or not the rule 29, the granting of the rule 29 also applies to count two, which it doesn't. However, there was a specific finding of five by the district court. You don't waive any arguments, you know, by failing to repeat them. All right. Thank you. Thank you. I'll sit down. I'll just look for that. My apologies. Thank you. One more thing I'm curious about while you're looking is whether the judge gave the jury 12 Xerox copies of the instructions or one or none, whether they just heard the judge orally. Another thing to think about while you're checking it out. You may look at transcript 133. It says these are the instructions you will be guided by. You will have a copy of these instructions when you go into the jury room. So at this time, we'll begin closing argument and start with the government. And that settles that, Your Honor. That's the answer. My apologies for not allowing you the answer. Once again, we seem to know the case better than the lawyers. Slightly embarrassing. This is two years ago. And no excuse. As much as I've read, to be ready, and I'm still, I cannot answer the court accurately on something I've done. So. Thank you, counsel. Thank you. May I say to the court, it is my reading also that the jury was instructed before and not after. And then given copies to take into the jury room? And they were given copies. I'm not sure how many copies. I'm not. Counsel, I'm kind of shocked, frankly, by what the jury was told here after they heard the judge's oral instruction. The prosecutor says to him, everyone who comes into a criminal courthouse is entitled to a presumption of innocence on self-proven guilty by a reasonable doubt. That's right. Everyone is entitled to that presumption. And now it goes kind of weird. Until that time, and that time, ladies and gentlemen, has passed. You now have all the evidence. And when you retire to the jury room to deliberate, that presumption is gone. You are no longer, no longer, you are not only no longer obligated to presume innocence. You are not obligated, but you are obligated to draw rational conclusions from the evidence, return a rational decision on the basis of the evidence. Well, now it's getting back to where it should be. It's just plain false and misleading to tell them the presumption is gone.  And then when I look in the rebuttal argument, which is the last thing the jury evidently heard before they went into the jury room, because the instructions were before and not after, the prosecutor says, Ms. McCall, that's the prosecutor, right? Counsel, Ms. McCall was the prosecutor? Yes, there were two prosecutors, Mr. Keene and Ms. McCall. She says, speaking of hiding things, there is a lengthy report which, according to the rules of evidence, you will not be seeing because your evidence consists of live eyewitness testimony you've heard all week. I don't know why nobody corrected it. I don't know why the defense lawyer didn't. I don't know why the judge didn't. And I don't know why the other prosecutor in the room didn't correct those two things. I think there's a good reason why. It's because it wasn't understood that way when looked at on the blank record. And there's no doubt to say, you know, if all there was, when you retire to the jury room, the presumption is gone. That statement of itself is absolutely incorrect. It's error to say that. Why didn't the judge correct that? Because that's not what the person was really saying. And it's critical to know. Time out. Were you there? I was not there. Okay. So you're reading the raw record, too. I'm reading the raw record. I will say that I did ask both these prosecutors to explain to me what happened and what they were thinking about. And they said you had to be there. Pardon? And they said you had to be there to understand. No. No, they didn't say you had to be there. But what they did say, they were shocked when they, frankly, Mr. Keene, when I showed this to him, he just looked and stared and said, oh, my God, I did say that. But that's not. And you notice he says the presumption, they're entitled to the presumption until that time. What's he referring to that time? He's referring to what he had just said. You've heard all the evidence now. It is proper for the governor to say if we've proved every element beyond a reasonable doubt, then we've destroyed the presumption. And what he should have said, and now is that time because we've done that. But then he puts this in. And he should. Well, presumption doesn't change at that time. It changes once there's a guilty verdict. Once there's a guilty verdict, the person is presumed guilty. But, yes, but the government has to defeat that presumption. And, frankly, you know, why a prosecutor would use the word presumption in any sense in a closing, quite frankly. But I will say these are two very inexperienced prosecutors. This is not by way of justification, but by way of explanation. Two inexperienced prosecutors here who did certainly make, were inarticulate in trying to make arguments. On the record, it's error. It's plain error. It probably affected substantial rights. And it seems that everybody's telling us this trial was a disaster. The defense attorney is saying, boy, I blew it. And you're telling us now you have inexperienced prosecutors stumbling all over themselves. Yes, but in order to reverse for plain error. Maybe this is something that we ought to take notice of, in other words. There was not a fair trial, period. Everybody's asking, this witness said X. Was that witness lying? Both sides were doing that, too. I do want to take absolute exception with that it was just defense not recognizing when it came to lying. The entire defense was that the agents were lying. But the defense counsel accused the agents of fabricating evidence, of hiding things, of secrecy. The reason there's no objection is because she wanted those answers. And I think it's disingenuous now to say that they didn't. On direct, this defendant was asked. I thought defendants were allowed to put on evidence and arguments to the effect that the prosecution witnesses are lying. Frankly, I've never understood our Ninth Circuit rule that the prosecution cannot then put on evidence that the defendant's case requires that everybody be lying. But that's the rule. Right. And I'm not trying to justify. I'm just trying to point out that. The reasons we have plain error is to avoid manifest injustice. And manifest injustice happens when it prejudices the defendant. How do we know? I mean, how do we know? I once had a jury foreman tell me that he knew my client was guilty, but those foolish instructions required an acquittal. And that's the only reason they acquitted. And I should be ashamed of myself. How do we know that there wasn't something like that that happened in the jury room here? That they'd forgotten what the judge said because they'd just heard the prosecutor tell them, no doubt in a more animated tone, that the presumption was gone. So they get into the room and one of them says, well, he's presumed innocent unless proven guilty beyond a reasonable doubt. I even know that from television. And then another juror says, no, no, no. You heard the prosecutor. That presumption's gone. Well, I can't get into the jury's mind. But what I do know is that. We can draw inferences about what the risks are from what the jury heard on the record. Yes. But what I do know is that where there's substantial independence evidence of guilt, that prevents reversal for plain error. And the reason we have that rule is so that what happened here doesn't happen. Rich is a defendant, gets to sit on his hands, watch error after supposed error, some of which I would claim were not. But even assuming that error, watch error and not object. And then come here and ask this court to give them a second bite of the apple. Here there is substantial independent evidence of guilt. This is not a case where we're going to convict an innocent person. We have expert testimony to show how alien smuggling works in this area. The people come. They hide. Other people meet them. And then they're guided away from their hiding. Frankly, I would have voted to convict myself. I'm inclined to agree with you. However, I don't know if I can be confident enough. The fact of the matter is your star witness didn't show up. And jurors, sometimes jurors are really upset because they didn't get evidence they think they should have gotten. And so I'm just wondering whether there might have been a hung jury or even an acquittal without those wrong statements. Why is that not a reasonable risk here? Because I believe the evidence was overwhelming. And it wasn't our star witness. It was the material witness to establish alienage. And the government did, in fact, do that through a relative. Now, the one thing we didn't get in at trial, although it's clear. So all you were going to use the guy for was alienage, everything else in your case you could make without him? Absolutely. Because what we have is a person. That matters. We know someone's come over the fence. That he doesn't cross the first street going north. So basically, you've got all the witnesses you need to establish he snuck in over the fence. Absolutely. And that this fellow, Flores Perez, had this contact with him that looked suspicious. Absolutely. I think it's more than looked suspicious. I mean, Flores knew there were four dumpsters there. He knew exactly which dumpster to go to. He didn't go to all of them. He went to the exact one. He didn't go once. He went back and back a third time to yell into that dumpster. When the person gets out, he says, keep moving. Maybe that's a conference room in that area. Well, Your Honor, in light of the... So what you're saying is you had such overwhelming evidence that even plain error doesn't affect substantial rights? Yes. And that's exactly our argument. That this is so overwhelming, not to justify the errors, but that it just doesn't require reversal in this case. You're leveling pretty serious charges against counsel here by telling us that basically she just lied to us. You're telling us that she knew damn well that these mistakes were going on and she was rubbing her hands together thinking appeal. Boy, I'm going to get them on appeal with these little errors. And then she just got up in front of us and completely misrepresented what happened. These are reasonably serious charges and we can't handle them. I probably was a little aggressive on that point. I mean, I think there was some thing. But I would say that it does seem odd that when the entire defense was based on that to now complain of that. I mean, it certainly is a reasonable difference from the remittance. Your people say, gosh, now that we've thought about it, we didn't know what was going on. And the other side says the same thing. I mean, it's not like this is a giant conspiracy of one to mislead the court. No, I don't believe so. And I truly believe that the prosecutor is here. Wait a minute. I don't get the legal part of your argument. You can't fight fire with fire that way under the established precedent of the Ninth Circuit. Even if the defense calls all your witnesses liars, under our precedent, you can't say, doesn't your argument require that A was lying and B was lying and C was lying and D was lying? I agree. But the reason for that rule is because it's not allowed for one witness to talk about the veracity or credibility of another witness. We don't allow that. But that's exactly what the force of the defense was. So all I'm trying to say is the reason behind the rule doesn't exist here. Because that is exactly what the defense wanted the jury to think. So it doesn't excuse the error, but it does explain what's happening in the case. And I would just say that, you know, misconduct is used often when we talk about these things. But I would say there was no intentional wrongdoing here. And this Court very well knows now, these days, when the word misconduct is used, that opens an OPR investigation. OPR must be notified. Must be notified. And that's recognized in cases like this. Are you telling us that we have to be softer on prosecutors than we are on defense lawyers or lawyers in civil cases? Because there'll be an OPR investigation if we say something that's the same on a prosecutor that we'd say on any other lawyer? No. I'm just saying that there are times when error occurs and even reversible error occurs. But it may not be misconduct. And I would just ask the Court to consider that there is a difference there. Yes, errors can occur. And I would ask the Court, in every one of these errors, as I've said, when you look, yes, when you look at the single statement, you can see, but if you look back and see the flow of the argument, you can see why, what an inarticulate, inexperienced prosecutor was trying to say and what, and the mistake that was made in trying to say it. I think if you looked at our notes, sir, our marked-up transcript, you'd realize that we always read the entirety of the passage. All of us have done trials one way or another, and we are fully aware of context. But we do, as you did in your brief, zero in, as we must here, on what was a very blatant misstatement of the law. Then the question is whether, as we're invited to by you and the precedent in our own instincts, is to look in context and see how it must have come across. And that's what we have to wrestle with. Do you send new prosecutors to Columbia to teach them not to do these things? Yes, we do. And we do have our own training program. And I can assure you, after this trial, there was enough more training done. In medical schools and in hospitals, when there's a disaster, they bring in all the doctors and say, here's the reason this patient died. I hope you do the same. We did that in this case in particular, Your Honor. This morning has been rich with seminar material. You've got 28-day letters. I agree, Your Honor. For the audience, OPR means Office of Professional Responsibility that polices the Justice Department lawyers to make sure they don't violate the law. I would just ask the Court to look at the Brooks case, 508-5-3, cases 1209 to 1212. There, there were several allegations of misconduct, as in this case. But as in this case, the Court found that, where there's substantial independent evidence of guilt, it doesn't require reversal. And I would say that that's what... So was there a constructive amendment of the indictment in this case? Your Honor, I believe there was a problem with the jury instruction. We can't get away from that, because the judge said both transportation and attempt. I will say, the judge made it clear the charge was attempt. That's what was in the instructions that went back with him, that it was attempt. That's what all the evidence was directed towards. So I don't, again, under plain error, I don't think there's any injustice here. I think it was clear to the jury what happened. And I will, just to briefly address the sentencing issue brought up. That's the defense burden to bring that. Not only did they not meet their defense, they didn't even ask for it. And it's a different question at sentencing. It's whether the offense itself involved profit, not whether this person, this Court has held that. And there was uncontroverted evidence in the PSR that this man was going to pay $2,000. Thank you. Thank you, counsel. Oh, my God is what I said, too, when I read the record. And basically, this is error on all parts. There's three layers in the file. We've got some little error here, some little error there, or not so little. And the effect is this was not a fair trial. The other side says we look through all of that, look at the evidence, and it's overwhelming of guilt. And your response would be what? I don't agree, the evidence being as overwhelming. It was not even strong. I'm not even going to bring up the negotiations prior to the case going to trial. This was not a strong evidence. I would not agree with that. Why not? Because of the conduct. I mean, what innocent conditions would explain the observed facts? Well, the taxi cabs, when my client is seen talking, we know in the record, they're coming and going. There's basically the three who leave, and then there's two new ones. They're idling. So I know there's a lot of people in the middle of the night at that time, not what the Border Patrol was trying to pursue. It's a little unusual to help somebody into a cab, unless it's maybe an old lady in the rain or something. But that's not the strongest part. The strongest part, I think, is using the dumpster as a conference room. All right. The dumpsters, they're lined up linear, and the dumpster that he was seen going towards was the very first dumpster you come upon when one walks from the taxi cab. Why would he go and chat with somebody in a dumpster? He was not chatting. He was yelling. So that's a common fact. Everyone knows that dumpsters. Everybody hangs around dumpsters and yells at people in them. That's a common fact. Well, not in San Diego or in Los Angeles, but in that part of Calexico. There's cardboard. I mean, I went to the scene. Why would you yell, get out, get out, to somebody in a dumpster? Well... What innocent explanation is there for that? Innocent explanation, he believes he's helping the national, and that the border patroller, based on his statements in the 404, that he's basically commiserating with the people, knowing he's going to get arrested. That's an innocent explanation. What's that intent of... He's trying to help people avoid arrest? That's a reasonable inference from that evidence. So the idea is that he's not an alien smuggler. What he is is a guy who feels bad for aliens who snuck in, and when he thinks they're likely to get busted, he says, get out, get out, I can't, get out of here. Because there's no other evidence of any preparation, or basically even if there is evidence, assuming we... What about the evidence of $2,000? What evidence? We were told there's evidence in the PSR that there was payment for this. That did not come into the trial. The PSR is a probation report based on hearsay and evidence that was not entered into the record. The star witness who did not show up was a material witness. Basically, he was also going to be talking about the... That's why the Rule 29... Is it true that all they needed him for was to prove he was an illegal alien, and they were able to make the rest of the case without him? I don't agree. They made the rest of the case without him. Well, they did, but absent my failure to object, and maybe some of the other errors, they may not have been. But the material witness would have testified to the financial arrangements by some other parties and whatnot, and that did not come in. So, because he wasn't there to testify, so he would have had more to say had he been there. So, I don't think in the sense of whatever he would have had to say at the scene, which has been reflected in the PSR, the probation report, but that was not evidence that was admitted to the jury. So, we're bound by what went on through the... We cannot consider evidence that was not submitted to the jury. We're bound by that. Thank you, counsel. That's our limitations. And basically, thank you for your time. Thank you. Thank you, counsel. United States v. Flores-Perez is submitted. We'll hear United States v. Godinez-Ortiz.
judges: Trott, Kleinfeld, Fisher